IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| GRAPHIC PACKAGING INTERNATIONAL INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION No. 5:05-CV-441 |
| UNITED STEELWORKERS INTERNATIONAL UNION, LOCAL No. 572 | ) ) ) ) | |
| Defendant. | ) ) | |

### COMPLAINT UNDER LABOR MANAGEMENT RELATIONS ACT TO VACATE ARBITRATION AWARD

This is an action brought under Section 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. §185 (hereinafter "LMRA") to vacate an arbitration award issued in favor of defendant.

I.   **PARTIES**

1.   Plaintiff Graphic Packaging International, Inc. (hereinafter the "Company") is a publicly owned Delaware corporation headquartered in Atlanta, Georgia. The Company owns paper manufacturing and converting facilities throughout the United States. The paper mill at which this dispute arose is located in Macon, Georgia. The Company is an employer in an industry affecting commerce within the meaning of the LMRA.

2.   Defendant United Steelworkers International Union, Local No. 572 (hereinafter the "Union") is the certified collective bargaining representative for a unit of production and maintenance employees employed by the Company at the Company's Macon paper mill. The

1

Union is a labor organization within the meaning of the LMRA. The Union's principal office is located in Pittsburg, Pennsylvania.

## II. JURISDICTION

3. Jurisdiction is granted to this court by virtue of 28 U.S.C. §1331 and 29 U.S.C. §185.

## III. VENUE

4. Venue is proper in this district pursuant to 28 U.S.C. §1391 and 29 U.S.C. §185(a) and (c).

## IV. GENERAL ALLEGATIONS

5. The Company and its predecessors and the Union and its predecessors have been parties to a series of collective bargaining agreements that have set forth the terms and conditions of employment for employees in the bargaining unit described in paragraph 2, above. The parties were signatory to a collective bargaining agreement effective January 1, 1998, through December 31, 2003, under which this dispute arose. An accurate copy of the collective bargaining agreement (hereinafter "CBA") is attached as Exhibit A and incorporated herein by reference.[1]

6. Article XIV of the CBA is entitled "Grievance and Arbitration Procedure" and reads in relevant part:

> A grievance is defined as any dispute over the interpretation or application of or compliance with this Agreement.

---

[1] The Company's predecessor was Riverwood International Corporation and the Union's predecessor was United Paperworkers International Union, AFL-CIO, Local No. 572 as indicated in Exhibit "A." The parties to this dispute were created by merger and both parties adopted and succeeded to all provisions and obligations of said CBA. Two other unions, International Brotherhood of Electrical Workers, AFL-CIO, Local No. 1316 and International Association of Machinists and Aerospace Workers, AFL-CIO, Lodge No. 1034 are parties to said agreement, but neither is involved in this dispute.

Article XV of the CBA provides as follows:

"If the Union claims that any employee has been discharged unjustly, it shall file such claim within ten (10) days after written notice of discharge, and the matter shall be considered as a grievance and handled as provided for in Article XIV commencing with Step Three.

7. On May 23, 2003, loader operator William Kelso (hereinafter "Kelso" or "grievant"), a member of the bargaining unit under the contract, was operating a truck during the line and scope of his duties as a loader operator for the Company. Kelso backed the truck partially off the edge of a road, where it became dangerously suspended and inoperable over a sludge pond. The accident occurred at 5:30 p.m. on a Saturday, about an hour and a half after Kelso clocked in at 4:00 p.m. Supervisor Anthony Perkins determined that this accident was caused by "abnormal behavior," which gave "reasonable suspicion" for drug testing under the Company's Drug/Alcohol Policy. Mr. Perkins conferred telephonically with his boss, Product Engineer, Joel Hazard, and then had grievant drug tested.

8. The labor agreement contains Plant Rules, and "Group II" of the rules provides "First Offense - Discharge." Rule 19 of Group II prohibits "Violation of the Company Drug/Alcohol Policy." The Drug/Alcohol Policy itself provides:

RIVERWOOD INTERNATIONAL CORPORATION
MACON PAPERBOARD
DURG/ALCOHOL POLICY [sic]
EFFECTIVE: AUGUST 17, 1992

INTRODUCTION

The use of substances, including drugs or alcohol which affects the safe and efficient functioning of any employee, is a serious concern. Substance abuse will eventually reduce the efficiency of an individual and create a greater potential for accidents within our organization. Therefore, any use of illicit or controlled drugs (unless properly prescribed by a physician), including illegal, designer and improperly used over-the-counter

3

medication, will not be tolerated. To deter current and future use of illicit or controlled drugs we have established the following procedure.

**I.    EMPLOYEE ASSISTANCE PROGRAM**

\* \* \* \* \*

C.   If an employee does not elect to seek help through the EAP and it is determined that he has drugs in his system, he shall be subject to immediate termination.

\* \* \* \* \*

**II.   TESTING PROCEDURE**

A.   An employee whose conduct indicates that he/she is not in a physical condition that would permit the employee to perform in a job safely or efficiently will be subject to a urine, blood or breathalyzer test to determine the presence of alcohol or drugs in the body.

1.   A supervisor must have reasonable suspicion to believe that he [sic] employee is under the influence of or affected by alcohol or drugs. Reasonable suspicion includes abnormal coordination, appearance, behavior, and speech.

\* \* \* \* \*

B.   Failure to submit to a test required on one of the above bases will be grounds for termination.

9.   Kelso undisputedly tested positive for cocaine some 107 mg/mcl above the limits set in the Drug/Alcohol Policy.

10.  Kelso was terminated for violation of the Drug and Alcohol Policy on May 24, 2003. The Union filed a grievance on his behalf on June 23, 2003.

11.  Stanley Sargent was selected to serve as arbitrator and a hearing on the Union's grievance was conducted in Atlanta, Georgia on June 24, 2005. The parties subsequently filed post-hearing briefs with the arbitrator.

12.  On September 8, 2005, Arbitrator Sargent issued and signed the decision attached hereto as Exhibit B, which was received by mail by the Company on about September 12, 2005.

4

13. In his award, Arbitrator Sargent sustained the Union's grievance and ordered the Company to return William Kelso to work without back pay.

14. The arbitrator found that "the fact that the grievant engaged in conduct which warranted discipline, and perhaps even discharge, is undisputed." The contract provides that "if the union claims that any employee has been discharged unjustly . . ." it may pursue a claim through the grievance-arbitration process.

15. The arbitrator's authority is limited by the contract language as follows:

### ARTICLE XIV
### GRIEVANCE AND ARBITRATION PROCEDURE

\* \* \* \* \*

The impartial arbitrator **shall recognize that all rights of management belong to the Company except to the extent this Agreement specifically provides otherwise, nor shall he have any power to** add to or subtract from or in any way **modify this Agreement. If the grievance raises an issue under state or federal law, the arbitrator will resolve the issue based on the controlling laws or precedents including but not limited to civil rights laws. To the extent allowed by public policy the award shall effect a final and binding resolution of the statutory claim.**

After the impartial arbitrator has heard the facts and evidence presented, he shall render a decision in writing within thirty (30) days. Such decision shall be final and binding on all parties to this Agreement.

(Emphasis added).

16. The procedure provisions of the Drug/Alcohol Policy provided, at II(2), that:

"If two management employees are on the premises, the reasonable suspicion for testing must be confirmed by another member of management. If only one is on the premises, the supervisor must confirm his reasons for testing with another member of management by telephone prior to testing. A union official will be present."

17. The National Labor Relations Act (NLRA) had been interpreted by the National Labor Relations Board (NLRB) as requiring an employer to provide a union representative upon request to a union employee who requests one and denial of a representative upon request is an unfair labor practice under Weingarten. If, however, the employee's request for representation is denied, but the employee is fired for misconduct unrelated to the denial of representation at the interview, said employee, under the NLRA, is not entitled to be provided with the remedy of reinstatement as a matter of law.

18. In regard to the contention of the Union that the Company unjustly terminated Kelso, the arbitrator stated:

> Although the charge of disparate treatment that has been advanced by the Union has no support from either a factual or legal standpoint, **there is one other aspect of this case that is extremely troubling insofar as the concept of just cause** is concerned. **It involves a procedural due process issue and relates to irregularities and improprieties in the manner in which the Company applied the Drug/Alcohol Policy.** In particular, it concerns the Company's failure to have a Union Representative present **when the decision was made to require the grievant to submit to a drug test.** In my judgment, that procedural shortcoming casts a substantial cloud over the legitimacy of the decision that was made by management to terminate the grievant's employment.
>
> The express terms of the Drug/Alcohol Policy mandates that whenever a member of management is in the process of deciding whether to have an employee tested for alcohol or drugs, "a Union official will be present." This requirement, which is clear and unequivocal, is obviously designed to ensure that the procedural due process rights of an employee who is suspected of using drugs or alcohol are protected. Moreover, contrary to the Company's assertion, this requirement must be observed and given effect regardless of whether the employee requests representation, and **it cannot be waived by previous inaction on the part of the Union because it is a benefit that inures to the employee. Further, given the fact that representation is mandated by the policy, the Weingarten rule, under which an employee is**

6

**obligated to request representation before a violation can be found, does not apply here.**

(Emphasis added.)

19.　In his conclusion, the arbitrator continued to write as follows:

>　One member of management testified that he agreed that the Drug/Alcohol Policy requires that a Union Representative must be present whenever a decision to test for drugs or alcohol is contemplated. **However, he tried to de-emphasize the importance of this requirement by reasoning that the only purpose for having representation is to ensure that two members of management confer with respect to the decision to administer a test.** This line of reasoning either misunderstands or underestimates the value of providing employees with union representation during the investigatory process. The importance of this is to ensure that an employee who is the subject of an accusation of misconduct has the benefit of guidance from a trained individual who can help him understand the nature and consequences of the charges against him and who can assist him in defending those charges and/or minimizing their effect. **Thus, to blithely suggest that a Union Representative would not have helped the grievant avoid testing or termination or that the failure to provide representation did not prejudice the grievant is to simply ignore the salutary purposes that such representation is designed to accomplish. While I must agree with the Company's contention that it may not have mattered in the present case and that the end result would likely have been the same, the undeniable fact remains that it <u>could</u> have mattered.** Therefore, the denial of the grievant's right to representation is found to constitute a sufficiently egregious procedural violation to render his termination unfair and unjust.

(Emphasis added).

20.　Regarding the appropriate remedy, the arbitrator decided:

>　**Having determined on the basis of a procedural flaw that the discharge of the grievant is without just cause**, the only remaining issue concerns the appropriate remedy. in that regard, I have determined that while the grievant is entitled to reinstatement with full seniority, he is not entitled to back pay for lost earnings or other benefits. The primary reason for this conclusion is that the procedural violation that occurred in the present case does not

7

>   exonerate the grievant or otherwise excuse his behavior to the extent that he is entitled to a make whole remedy. **Instead, it is only viewed as a mitigating factor which warrants giving the grievant another chance by rescinding the discharge and** substituting in its place a disciplinary suspension equivalent to the period of time he has been off work.

(Emphasis added).

### V.     CAUSE OF ACTION

21.     Plaintiff incorporates herein by reference each and every allegation contained in paragraphs 1 - 16 of its Complaint.

22.     In upholding the grievance and in ordering the relief found in the award, Arbitrator Sargent exceeded the authority granted him by the CBA.

23.     Arbitrator Sargent's award does not "draw its essence" from the CBA in that:

   A.   The award conflicts with the express terms of the collective bargaining agreement;

   B.   The award imposes additional requirements not expressly provided for in the agreement;

   C.   The award is without rational support or cannot be rationally derived from the agreement;

   D.   The award is in manifest disregard of the law; and

   E.   The award impermissibly modifies the terms of the CBA.

24.     Arbitrator Sargent's award violates the public policies of this State and the nation, i.e., the remedy directly violates the NLRB.

25.     Arbitrator Sargent's award should be vacated.

WHEREFORE, Plaintiff requests judgment and relief from this Court as follows:

1.     That the award of Arbitrator Sargent in FMCS Case No. 03-51395 be vacated; and

2.  That Plaintiff be awarded such other and further relief as the Court deems just and proper.

This _20th_ day of November, 2005.

        Respectfully submitted,

        Peyton Lacy, Jr.
        **Ogletree, Deakins, Nash,**
           **Smoak & Stewart**
        One Federal Place, Suite 1000
        1819 Fifth Avenue North
        Birmingham, Alabama 35203
        (205) 328-1900
        (205) 328-6000 (fax)

        _____
        C. Garner Sanford, Jr.
        **Ogletree, Deakins, Nash,**
           **Smoak & Stewart**
        Bank of America Plaza, Suite 2100
        600 Peachtree Street
        Atlanta, Georgia 30308
        404-881-1300
        404-870-1732 (fax)

# EXHIBIT A