IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| GRAPHIC PACKAGING INTERNATIONAL INC., | : : : | |
| Plaintiff, | : : | 5:05-CV-441 (CAR) |
| vs. | : : | |
| UNITED STEEL WORKERS INTERNATIONAL UNION, LOCAL No. 572, | : : : : | |
| Defendant. | : | |

## ORDER

Before the Court are Defendant United Steel Workers International Union, Local No. 572's ("Union") Motion for Summary Judgment [Doc. 14], Plaintiff Graphic Packaging International Inc.'s ("Company") Motion for Summary Judgment [Doc. 17], and its Motion to Strike [Doc. 26].

For the reasons discussed below, the Court **GRANTS** Union's Motion for Summary Judgment [Doc. 14], **DENIES** the Company's Motion for Summary Judgment [Doc. 17], and **DENIES** as moot the Company's Motion to Strike [Doc. 26].

### I. BACKGROUND

This case involves judicial review of an arbitration award. The Company brings the lawsuit pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. §

185 (2007), to vacate an arbitration award. The facts leading up to arbitration, as laid out by the arbitrator, and which are beyond the scope of this Court's review, are as follows.

### a. The Incident

As of 2003, the Company had employed Mr. William Kelso ("Kelso") for nearly ten years as a truck operator in its Macon, Georgia, paper mill. On May 24, 2003, Mr. Kelso was involved in an accident while driving the Company's truck. As a result of the incident, the Company subjected Mr. Kelso to a drug test. The drug test came back positive for cocaine, and the Company discharged Mr. Kelso for violating the terms of the Drug/Alcohol Policy that prohibited the use of drugs on the job.

### b. Subsequent Events

At the time relevant to this action, the Union (as the authorized bargaining representative for the Company's employees, including Mr. Kelso) and the Company were parties to a collective bargaining agreement ("Agreement"). (Doc. 1-2.) The Agreement allows the Union to file a grievance if it believes that "an employee has been discharged unjustly." (Doc. 1-2, Art. XV, at 11.) Believing that Mr. Kelso was "unjustly" terminated, the Union filed a grievance. After unsuccessful attempts to solve the matter internally, the parties submitted their dispute to an impartial arbitrator.

### c. The Arbitrator's Decision

The parties could not agree on the issue to be submitted to the arbitrator, so the arbitrator framed the issue to be decided as follows: "Did the Company have just cause to discharge [Mr. Kelso] and, if not, what should the remedy be?" (Doc. 1-3, at 6.) The parties did not dispute that Mr. Kelso engaged in misconduct that warranted some discipline. The Union, however, contended that discharge was an inappropriate penalty and should be rescinded on the grounds that Mr. Kelso was a victim of disparate treatment as evidenced by the fact that other employees in similar circumstances were not discharged.

After full presentation of the evidence, the arbitrator concluded that "the charge of disparate treatment that has been advanced by the Union has no support from either a factual or legal standpoint ." (Doc. 1-3, at 26.) Notwithstanding that finding, however, the arbitrator found that the Company lacked "just cause" to discharge Mr. Kelso because the Company failed to provide Mr. Kelso with a union representative at the time it made the decision to drug-test him as mandated by the Drug/Alcohol Policy[1] incorporated into the Agreement.[2] According to the arbitrator, "that procedural

---

[1] The Drug/Alcohol Policy provides as follows: "If two management employees are on the premises, the reasonable suspicion for testing must be confirmed by another member of management. If only one is on the premises, the supervisor must confirm his reasons for testing with another member of management by telephone prior to testing. *A Union official will be present*." (Doc. 20-3, at 3 (emphasis added).) The parties do not dispute that sufficient number of management personnel was present.

[2] The Agreement provides that: "The Company policies, rules and regulations covering employees attached hereto, and shown as Exhibit "B" are affirmed and will continue in effect and force during the life of this Agreement. Supplements to these policies, rules and regulations as issued from

shortcoming cast[] a substantial cloud over the legitimacy of the decision that was made by the management to terminate [Mr. Kelso's] employment." (Doc. 1-3, at 26.) The arbitrator went on to find that the denial of Mr. Kelso's right to union representation "constitute[d] a sufficiently egregious procedural violation to render his termination unfair and unjust." (Doc. 1-3, 28.) Having found no "just cause" for discharge, the arbitrator modified Mr. Kelso's disciplinary action from discharge to reinstatement with full seniority, albeit without back pay in light of Mr. Kelso's drug-related misconduct.

The Company then filed the current action, seeking to vacate the arbitrator's award. The Union, on the other hand, filed a counterclaim asking this Court to affirm the award. Both parties now move for summary judgment.

## II. DISCUSSION

**A. Motion to Strike**

Preliminarily, the Company asks this Court to strike the declaration of Mr. Ed Glover that the Union filed in support its motion for summary judgment. As the Court does not rely upon this declaration in reaching its decision on the parties' cross motions for summary judgment, the Court **DENIES** the motion as **moot**.

---

time to time by the [C]ompany and agreed to by the Union, that are not in conflict with the provisions of the Agreement, shall be observed by all employees the same as any other provision of this Agreement after being posted on the main bulletin board for seven (7) calendar days." (Doc. 1-2, Art. XXI, at 17.)

**B. Parties' Cross Motions for Summary Judgment**

  a. Legal Standard

It is axiomatic that courts play a limited role in reviewing the decisions of arbitrators to encourage arbitration as an alternative means of dispute resolution. See United Steelworkers v. Enter. Wheel & Car Corp., 363 U.S. 593, 596 (1960) (stating that "[t]he federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards."). In light of such public policy considerations, a court "may not vacate an arbitral award unless it is irrational, exceeds the scope of the arbitrator's authority, or fails to draw its essence from the collective bargaining agreement." IMC-Agrico Co. v. Int'l Chem. Workers Council of the United Food and Commercial Workers Union, 171 F.3d 1322, 1325 (11th Cir. 1999) (citing Butterkrust Bakeries v. Bakery, Confectionery and Tobacco Workers Int'l Union, 726 F.2d 698, 699 (11th Cir. 1984)). "Courts . . . do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 37-38 (1987). "To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them . . . [A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed

serious error does not suffice to overturn his decision." Id. In short, strong precedent dictates judicial deference to arbitration awards, and the Court will review the arbitration award in this case accordingly.

### b. Existence of "Just Cause"

The Company contends that this Court should vacate the arbitration award because the arbitrator exceeded his contractual authority by reinstating an employee who was discharged by the Company for using drugs on duty. In this case, the Agreement requires the Company to have "just cause"[3] in order to discharge its employees. Although the Agreement fails to define the term, it allows the Company to discharge its employees for "violations of the Drug/Alcohol Policy." (Doc. 1-2, at 31.) The Company argues that because a violation of Drug/Alcohol Policy is one of the listed offenses for discharge, Mr. Kelso's drug-related misconduct is per se "just cause" for his discharge, and the arbitrator's finding of lack of "just cause" is therefore contrary to the specific language of the contract and exceeds the arbitrator's contractual authority. The Court finds this argument unpersuasive.

According to the law of this Circuit, if the collective bargaining agreement

---

[3] Unlike many other collective bargaining agreements, the Agreement in this case does not specifically state that a discharge is subject to the "just cause" requirement. Article XV of the Agreement, the article establishing the grievance procedure, however, states that the Union may file a grievance only if it believes that "an employee has been discharged *unjustly*." (Doc. 1-2, Art. XV, at 11 (emphasis added).) The arbitrator concluded, and the parties do not dispute, that the aforementioned language subjects all discharges to arbitral review for "just cause."

unequivocally mandates discharge for certain types of conduct, then the inquiry of an arbitrator must be limited to "whether or not the disciplined employee did or did not engage in the specific conduct which resulted in the disciplinary action." IMC-Agrico Co., 171 F.3d at 1327. Only under those limited circumstances—when the collective bargaining agreement specifically mandates discharge for certain types of conduct—is an arbitrator's finding that the employee engaged in the prohibited conduct tantamount to a finding of "just cause" for discharge. Id. (stating that "once an arbitrator implicitly finds that the employee engaged in conduct that is defined by a bargaining agreement to be an offense subjecting [the employee] to discharge, then that is an implicit finding of just cause and the arbitrator's task is finished."); see also Warrior & Gulf Navigation Co. v. United Steelworkers of Am., 996 F.2d 279, 281 (11th Cir. 1993).

Contrary to the Company's contention, however, the Agreement in this case does not unequivocally mandate discharge upon violations of the Drug/Alcohol Policy. The Agreement enumerates "violations of Drug/Alcohol Policy" under the heading "Group II – First Offense - Discharge" in Exhibit "B" attached to the Agreement. (Doc. 1-2, at 31.) The section also provides that "where justified by circumstances, the Company may elect to impose discipline less than discharge for a violation of the Group II Rules." Id. Read in its entirety, this arrangement clearly contemplates that discipline less severe than discharge may be imposed for violations of the Drug/Alcohol Policy. In

other words, the Company may, but does not necessarily have to, discharge an employee for violations of the Drug/Alcohol Policy. In light of the fact that the Agreement does not, in absolute terms, mandate discharge for violations of the Drug/Alcohol Policy, the arbitrator was free to find that Mr. Kelso's drug-related misconduct did not implicitly constitute "just cause" for his discharge.

Moreover, where, as here, the Agreement subjects all discharges to arbitral review for "just cause" but fails to define the operative (and legally significant) term, it is up to the arbitrator to determine the exact parameters of "just cause." See First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Employees Union, 118 F.3d 892, 896 (2nd Cir. 1997) (stating that where the collective bargaining agreement fails to define "just cause," "it remains for the arbitrator to determine whether a discharge was for 'just cause.'"). This is especially true, where as here, the Agreement authorizes the arbitrator to resolve disputes concerning the interpretation or application of its terms. (Doc. 1-2, Art. XIV, at 11.)

In this case, the arbitrator concluded that "just cause" for discharge includes not only the substantive elements of the appropriate factual circumstances, but also the procedural requirement that the employee should have access to a union representative when the decision to drug test him is made. The Court finds that it was within the arbitrator's authority to make such a finding.

Courts have long held that arbitrators may consider procedural elements as part of the "just cause" analyses. See, e.g., Chauffeurs, Teamsters and Helpers Local Union No. 878 v. Coca-Cola Bottling Co., 613 F.2d 716 (8th Cir. 1980) (finding that where a collective bargaining agreement was silent on what procedural requirements attach to the process of a dismissal for just cause, the arbitrator's holding that the term has significant procedural implications was not beyond the scope of his authority and could not be set aside by the court). However, the procedural requirements must be based, at a minimum, on some language found in the Agreement, not on the arbitrator's general notions of fairness and equity. See, e.g., Fla. Power Corp. v. Int'l Broth. of Elec. Workers, 847 F.2d 680, 684 (11th Cir. 1988) (stating that an arbitrator may not "dispense his own brand of industrial justice" (citing United Steelworkers v. Enter. Wheel & Car Corp., 363 U.S. 593, 597 (1960))); Island Creek Coal Co. v. Dist. 28, United Mine Workers of Am., 29 F.3d 126, 129 (4th Cir. 1994) (stating that the arbitrator's decision "must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice" (quoting Misco, 484 U.S. at 38)). In this case the Drug/Alcohol Policy, incorporated into the Agreement, specifically mandates the procedural requirement that the arbitrator found lacking. The arbitrator was, therefore, well within his authority to conclude that the Company's failure to provide Mr. Kelso with a union representative when the decision to drug test him was made "constitute[d] a sufficiently egregious

procedural violation to render his termination unfair and unjust." (Doc. 1-3, at 28.) In short, because the Court finds that the arbitrator's interpretation of "just cause" was based on a reasonable interpretation of the language in the Agreement, the Court concludes that the arbitrator acted within the scope of his authority and issued an award that drew its essence from the parties' Agreement.

### c. Arbitrator's Authority

The Company next argues that the arbitrator exceeded his authority under the Agreement because the reinstatement award is contrary to the controlling law and precedent interpreting the Weingarten rule. While creative, the Court finds the argument unpersuasive. The Weingarten rule is a general labor principle that requires a company to have a union representative during disciplinary interviews, including the drug-testing procedure involved in this case, upon request of the employee. N.L.R.B. v. J. Weingarten, Inc., 420 U.S. 251, 260-261 (1975). As the Company points out, several National Labor Relations Board's ("NLRB") decisions have held that reinstatement and other "make-whole" remedies are improper where the only evidence of "lack of just cause" is the failure to provide a union representative as required by Weingarten. See, e.g., System 99, 289 N.L.R.B. 723, 724 (1988) (holding that an employer may terminate an employee for failing a drug test despite a technical Weingarten violation). Because the Agreement here requires the arbitrator to "resolve the issue [before him] based on the

-10-

controlling laws or precedents," (Doc. 1-2, Art. XIV, at 11), the Company argues that the arbitrator exceeded that authority when he reinstated an employee discharged for drug-related conduct solely because of what the Company perceives to be a <u>Weingarten</u> violation.

In making this argument, the Company mistakenly equates the <u>Weingarten</u> rule with the contractual provision the Company violated in this case. While it may be true that the existence of the contractual requirement in the Agreement requiring the presence of a union representative is based on concerns similar to those underlying the <u>Weingarten</u> rule, it is a separate requirement than the one mandated by the rule itself. While the <u>Weingarten</u> rule requires an employee to request the presence of a union representative, the contractual provision in this case mandates the presence of such representative, with or without an employee's request. In short, the <u>Weingarten</u> rule announces a general maxim, but the parties in this case apparently contracted around that maxim by including the provision in question into the Agreement. The contractual provision extends stronger protection to an employee than the <u>Weingarten</u> rule. Rather than putting the responsibility of asking for representation on the employee, as required by the rule, the parties presumably bargained for and agreed to shift that responsibility to the employer. The Company cannot now equate the two in order to avoid taking responsibility for its failure to abide by the plain terms of the contractual provision.

In light of this Court's finding that the contractual provision in this case is not equivalent to the Weingarten rule, the law interpreting the Weingarten rule does not circumscribe the arbitrator's authority, and the arbitrator was free, therefore, to reinstate Mr. Kelso upon finding that the Company lacked "just cause" to discharge him.

Finally, the Court notes that it is neither its desire, nor its practice to reinstate employees discharged for drug-related misconduct. However, the parties in this case bargained for an arbitrator, and not a federal court, to interpret the provisions of their Agreement. Having found that the arbitrator's award is based on a reasonable interpretation of the language in the Agreement and having found that the arbitrator did not exceed his contractual authority, the Court is bound to uphold the arbitrator's award.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Union's Motion for Summary Judgment [Doc. 14], **DENIES** the Company's Motion for Summary Judgment [Doc. 17], and **DENIES** as **moot** the Company's Motion to Strike [Doc. 26].

**SO ORDERED,** this 7th day of August, 2007.

S/ C. Ashley Royal

C. ASHLEY ROYAL
UNITED STATES DISTRICT JUDGE

EHE/ssh